DJW/bh

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**METROPOLITAN LIFE INSURANCE**
**COMPANY,**

                        **Plaintiff,**

                                                  **CIVIL ACTION**

v.

                                                  **No. 06-2026-CM-DJW**

**CARRIE R. MULDOON**
**a/k/a CARRIE R. RUDDY, et al.,**

                        **Defendants.**

**MEMORANDUM AND ORDER**

Pending before the Court is the Motion to Quash Settlement Funding's Rule 30(b)(6) Deposition Notice and for Protective Order (doc. 48) filed by the Intervenor United States of America ("United States"). The United States moves to quash the Rule 30(b)(6) Deposition Notice (doc. 45) filed by Defendant Settlement Funding, LLC ("Settlement Funding"). For the reasons set forth below, the Court will grant the motion.

**I.     Background Information**

This case arises of out of a Federal Tort Claims Act lawsuit filed by Defendant Carrie Muldoon (then a minor known as Carrie Ruddy) against the United States. The United States and a representative of Ms. Muldoon entered into a structured settlement in 1982 to resolve that lawsuit. Pursuant to the parties' settlement agreement, the United States purchased an annuity from National Investors Life Insurance Company ("National"). National was later acquired by Plaintiff Metropolitan Life Insurance Company ("MetLife").

The United States asserts that it is the owner of the annuity. It further asserts that as owner of the annuity, it has the exclusive right to designate the payee of the annuity. According to the

United States, payments under the annuity contract are not subject to assignment, as the annuity expressly states that "[p]ayments under this Certificate shall not be subject to assignment, transfer, commutation or encumbrance."[1]

In April 2003, Ms. Muldoon filed for bankruptcy in the United States Bankruptcy Court for the District of Kansas. According to Settlement Funding's Response to the Motion to Quash, Ms. Muldoon asserted in the bankruptcy proceeding that the annuity was exempt property. The trustee, however, objected to the exemption claim. Ms. Muldoon and the bankruptcy trustee reached a settlement of the exemption claim, which required Ms. Muldoon to obtain funds using the annuity to pay to the trustee. She then entered into an agreement with Settlement Funding, in which she assigned, or attempted to assign, to Settlement Funding, her rights to certain future annuity payments in exchange for a lump sum payment. The United States Bankruptcy Court approved the settlement.

As part of the settlement with the Bankruptcy Trustee, Settlement Funding filed a declaratory judgment action in 2005 in the District Court of Johnson County, Kansas. According to Settlement Funding, the United States was made a party to the action, but neither appeared nor objected to the proposed assignment. The District Court entered a declaratory judgment approving the assignment. The District Court ordered MetLife to make the annuity payments to Settlement Funding.

MetLife has filed the instant interpleader to resolve the issue of to whom it owes the annuity payments. Settlement Funding and the United States disagree as to whether Ms. Muldoon could properly assign the annuity payments to Settlement Funding. The United States contends that pursuant to the terms of the annuity contract, the payments were not assignable. Settlement Funding, on the other hand, contends that Ms. Muldoon properly assigned her right to payments to

---

[1]Periodic Payment Annuity Certificate, attached as Ex. 1 to Compl. in Interpleader (doc. 1).

Settlement Funding, and that the assignment, which has been approved by the Johnson County District Court, is binding on Ms. Muldoon and MetLife, as they were parties to that action.

**II.     The Rule 30(b)(6) Deposition Notice**

The deposition notice at issue asks the United States to produce a witness to testify regarding the following topics:

1. The government's policies and procedures regarding structured settlement transactions and changes in such policies and procedures for the following time periods: January - July, 1999; January - April 2001 and January - May 2005 [hereinafter referred to as "Topic No. 1"].

2. The facts surrounding the original settlement agreement and purchase of the Annuity that is the subject matter of this action, including who was responsible for the terms and conditions of the settlement agreement, the purchase of the annuity and any and all information provided to the parents of Carrie R. Muldoon (Ruddy) at any time before the purchase regarding the nature of the annuity or the terms and conditions that would be contained in the annuity [hereinafter referred to as "Topic No. 2"].[2]

The United States seeks to quash the Deposition Notice because it objects to the requests for information set forth in both Topic No. 1 and No.2. It objects to Topic No. 1 on grounds that (a) Topic No. 1 seeks information which is protected by the attorney-client privilege and attorney work product doctrine; and (b) the topic is overly broad and seeks information irrelevant to the case. The United States objects to Topic No. 2 on grounds that the information is irrelevant to the issues involved in the case and is outside the scope of judicial review. It also objects to Topic No. 2 on the basis that the information is not reasonably known by the United States and it would be unduly burdensome for the United Sates to reconstruct what took place during settlement negotiations that took place twenty-five years ago. Finally, the United States seeks to quash the Deposition Notice on the basis that it fails to comply with the Department of Justice's "Touhy Regulations."

---

[2]Rule 30(b)(6) Dep. Notice (doc. 45) filed Apr. 4, 2007.

**III.     Analysis**

    **A.     Topic No. 1: The Government's Policies and Procedures Regarding Structured Settlement Transactions**

The Court agrees with the United States that Settlement Funding's request to depose a representative of the United States about the policies and procedure regarding structured settlement transactions is objectionable because it invades the attorney-client privilege and work product immunity. By their very nature, structured settlements of the type at issue here involving the United States arise out of disputed claims brought in the context of either administrative tort claims or actions brought pursuant to the Federal Tort Claims Act. The deposition would necessarily inquire into the strategies and policies applied by the United States in resolving federal tort claims litigation. Thus, a request to depose a government representative regarding Topic No. 1 would invade the attorney-client privilege and work product doctrine. This is particularly true with respect to Settlement Funding's stated intention to seek discovery regarding the government's "intervention" and "objection" policies to show that the United States failed to object to the assignment and failed to intervene in the Johnson County District Court lawsuit, in contravention of its own policies and procedures. Clearly, such discovery would reveal litigation strategies and the conclusions and opinions of the government's attorneys.[3]

The Court also finds that the information sought in Topic No. 1 is irrelevant to the claims and defenses involved in this case. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense

---

[3]Although Settlement Funding indicates that it is willing to work with the United States to limit the scope of the questioning to avoid privilege issues, it does not explain in what respects Topic No. 1 would be narrowed nor does it identify any discrete topics that would not involve privileged or protected information.

4

of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[4]  Relevancy is broadly construed, and a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[5]  Furthermore, "the touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'"[6]

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure.[7]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[8]

The Court does not find that the relevancy of the information requested in Topic No. 1 is apparent from the face of the deposition notice.  Settlement Funding therefore bears the burden to

---

[4] Fed. R. Civ. P. 26(b)(1).

[5] *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 615 (D. Kan. 2005); *Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 (D. Kan. 2001).

[6] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 646 (D. Kan. 2004) (quoting Fed. R. Civ. P. 26(b)(1)).

[7] *Cardenas,* 230 F.R.D. at 615-16; *Owens*, 221 F.R.D. at 652; *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[8] *Cardenas,* 230 F.R.D. at 616; *Owens*, 221 F.R.D. at 652; *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000).

5

show how the requested information is relevant. For the reasons set forth below, the Court finds that Settlement Funding has not met that burden.

First, the request for information is extremely broad on its face and is not limited to structured settlements of tort claims; rather it seeks information about the structured settlement of *any type of claim.* Also, the time periods covered are overly broad. Settlement Funding does not explain how the time periods for which it seeks the policies and procedures information, i.e., January through July 1999, January through April 2001, and January through May 2005, are relevant to the case, when the annuity in question was purchased in 1982. While the Court notes that Settlement Funding's Answer (doc. 17) indicates Ms. Muldoon "entered into two prior Purchase Agreements with Settlement Funding in 1999 and 2001 transferring the right to receive payments due under the terms of her structured settlement,"[9] it is still unclear if and how those dates might relate to the time periods January through July 1999 and January through April 2001 specified in Topic No. 1. The Court can only speculate that there is some relationship with those events and the time frames listed in Topic No. 1. The same is true with respect to the specified January through May 2005 time period. The Court can only speculate that the time period may relate to the declaratory judgment action filed in the District Court of Johnson County, Kansas in 2005.

Moreover, the Court fails to see how the information requested is relevant to Settlement Funding's defense that the United States has no right to enforce the anti-assignment term of the annuity. Settlement Funding states in its response to the Motion to Quash that the settlement agreement did not give the United States the right to prohibit assignment of the annuity payments and that there is no evidence that the United States even requested the inclusion of the anti-

---

[9] Answer of Settlement Funding (doc. 17), ¶ 16.

6

assignment language in the annuity. Consequently, Settlement Funding "seeks to do discovery on the issues surrounding the settlement and the purchase of the annuity to establish that in fact the anti-assignment language was not put in the annuity at the request of the United States, was not to benefit the United States, and is contrary to what the parties agreed to when the case was settled."[10]

The Court fails to see how discovery relating to the United States' policies and procedures regarding structured settlement transactions for the specified time frames would be relevant to this defense. Nor does the Court understand how discovery relating to the United States' policies and procedures would lead to the discovery admissible evidence on this topic.

Settlement Funding also argues that "[t]he government's policies on intervention or objection would may [sic] be relevant or lead to the discovery of admissible evidence "to establish that the government . . . in fact did not object to the transactions at issue [assigning the annuity benefits] , or failed to follow its own policies in response to the lawsuit."[11] The Court fails to see how the United States' policies about objecting to annuity transfers or intervening in state court actions relating to the transfer of annuities have any bearing on whether Ms. Muldoon could legally transfer the annuity benefits to Settlement Funding.

In light of the foregoing, the Court sustains the United States' privilege and relevance objections to the extent Settlement Funding seeks to depose a United States representative regarding the government's policies and procedures concerning settlement transactions, as set forth in Topic No. 1 of the Rule 30(b)(6) Deposition Notice.

---

[10]Settlement Funding's Resp. to Mot. to Quash (doc. 53) at p. 5.

[11]*Id.* at p. 6.

7

**B.     Topic No. 2:   Facts Surrounding the Original Settlement Agreement and Purchase of the Annuity**

In Topic No. 2, Settlement Funding seeks to discover "the facts surrounding" the settlement agreement and the purchase of the annuity, including who was responsible for the terms of the settlement agreement and the purchase of the annuity, and all information provided to Ms. Muldoon's parents regarding the nature of the annuity and its terms. Settlement Funding states in its Response to the Motion to Quash that through Topic No. 2 it intends "to establish that in fact the anti-assignment language was not put in the annuity at the request of the United States, was not to benefit the United States, and is contrary to what the parties agreed to when the case was settled."[12]

The Court agrees with the United States that Topic No. 2 seeks irrelevant information. Any discussions that the government and Ms. Muldoon's parents had regarding the terms of the settlement or annuity cannot change the fact that the annuity unequivocally states that "[p]ayments under this Certificate shall not be subject to assignment, transfer, commutation or encumbrance."[13] It is simply irrelevant whether the United States might have, or should have, purchased a different annuity that would have allowed for the assignment of its benefits.

Also, the Court fails to see how such information might lead to the discovery of admissible evidence. Any representations the United States might have made regarding the settlement agreement and annuity, and the circumstances leading up to the formation of the agreement and the purchase of the annuity, would not be admissible at trial under the parol evidence rule. That rule prohibits the admission of evidence to vary the terms of a written agreement,[14] and statements or

---

[12] *Id.* at p. 5.

[13] Periodic Payment Annuity Certificate, attached as Ex. 1 to Compl. in Interpleader (doc. 1).

[14] *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 514 (10th Cir. 1994) (citations omitted).

representations made during the negotiations that conflict with written agreement, absent fraud, are inadmissible.[15] Admittedly, the parol evidence rule is an evidentiary rule that limits what is *admissible* and not what is *discoverable.* Nevertheless, it is proper to refuse discovery where all of the discoverable evidence would be excluded by the parol evidence rule.

Even assuming arguendo that the Court were to find that the information requested in Topic No. 2 is marginally relevant or might possibly lead to the discovery of admissible evidence, the Court finds that requiring the United States to produce a person to testify regarding Topic No. 2 would be unduly burdensome and would exceed the scope of Rule 30(b)(6). Rule 30(b)(6) expressly requires a governmental agency to designate a person to testify "as to matters known or reasonably available" to the agency.[16] As the United States points out, it would be unduly burdensome, if not impossible, for the Government to reconstruct the facts surrounding the preparation of the settlement agreement and purchase of the Annuity, including all information that was provided to Ms. Muldoon's parents about the nature of the Annuity, when the settlement agreement was prepared and the Annuity purchased twenty five years ago. Such facts are neither known nor "reasonably known" by the United States, and the burden of attempting to reconstruct the requested information simply outweighs its minimal benefit.[17]

In light of the above, the Court sustains the United States' relevance and burdensome objections to Topic No. 2 of the Settlement Funding's Rule 30(b)(6) Deposition Notice, and the Motion to Quash is granted with respect to Topic No. 2.

---

[15]*Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994) (citation omitted).

[16]Fed. R. Civ. P. 30(b)(6).

[17]*See* Fed. R. Civ. P. 26(b)(2)(C) (court may limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit").

Case 2:06-cv-02026-CM   Document 70   Filed 12/20/07   Page 10 of 12


### C. Compliance with the Department of Justice "Touhy Regulations"

The United States argues that the Deposition Notice should be quashed because it does not comply with the Department of Justice's Touhy Regulations[18] found at 28 C.F.R. Part 16, Subpart B (28 C.F.R. §§ 16.21-.29). As the United States points out, 28 C.F.R. § 16.23 establishes the parameters and procedures under which the Department of Justice may disclose information in cases in which the United States is a party. That regulation requires the Department of Justice official or attorney to consider the factors set forth in Section 16.26(a) prior to allowing the disclosure. Section 16.26(a) requires consideration of whether a disclosure is appropriate under the governing rules of procedure and the relevant substantive law concerning privilege.[19]

The United States argues that because Settlement Funding's Deposition Notice does not comply with the governing Federal Rules of Civil Procedure and the privilege laws, disclosure of the requested information is not authorized under the Touhy Regulations. It therefore asserts that the Motion to Quash should also be granted on this basis.

Within the administrative review process, the Touhy Regulations provide guidance for the internal operations of the agency.[20] The regulations do not, however, create a substantive defense

---

[18] Pursuant to 5 U.S.C. § 301, a federal agency may create procedures, or so-called "Touhy regulations" (named after the Supreme Court's decision in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)), for responding to subpoenas and requests for testimony. *See* 5 U.S.C. § 301 (authorizing an agency head to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.").

[19] 28 C.F.R. § 16.26(a) provides that in deciding whether to make a disclosure pursuant to a demand, the Department of Justice official or attorney should consider "(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege."

[20] *Commonwealth of Puerto Rico v. U.S.*, 490 F.3d. 50, 61 (1st Cir. 2007), *pet. for cert. filed*, 76 U.S.L.W. 3289 (Nov. 21, 2007) (No. 07-685).

to disclosure.[21]  In other words, "the regulations do not 'create an independent privilege' authorizing the Department of Justice to withhold information."[22]  Rather, they "simply set forth administrative procedures to be followed by the Department of Justice when demands for information are received."[23] Thus, the United States' compliance with the regulations cannot form the basis of the Court's decision to quash the Rule 30(b)(6) Deposition Notice.   Instead, the Court's decision must be based on the governing Federal Rules of Civil Procedure and the applicable privilege laws.

The Court has already applied the applicable Federal Rules of Civil Procedure and law regarding attorney-client privilege and work product to hold that the Deposition Notice should be quashed.  The Touhy Regulations do not provide an independent basis for the Court to quash the Deposition Notice.

---

[21]*Id.* (citing *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir.2001) (quoting 28 C.F.R. § 16.21(d)).

[22]*Kwan*, 252 F.3d at 1092 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir.1994)).

[23]*Id.*

11

**IT IS THEREFORE ORDERED** that the Motion to Quash Settlement Funding's Rule 30(b)(6) Deposition Notice and for Protective Order (doc. 48) filed by the Intervenor United States of America is granted.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 20th day of December 2007.

<div style="text-align: right;">
s/ David J. Waxse<br>
David J. Waxse<br>
United States Magistrate Judge
</div>

cc:   All counsel and pro se parties